# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:20-cr-00122-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| JOSE HUERTA-ZUNIGA and AGUSTIN GARCIA-ESTRADA, | |
| Defendants. | |

## I. INTRODUCTION

Pending before the Court is Defendants Jose Huerta-Zuniga and Agustin Garcia-Estrada's joint Motion in Limine. Dkts. 43–44.[1] Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART the motion.

## II. LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cty.*, No. 4:15-

---

[1] Defendants filed an initial Motion in Limine (Dkt. 43) on May 3, 2021, but promptly filed an amended motion (Dkt. 44) the next day. The Court refers to their amended motion—Dkt. 44—throughout this Order.

cv-00156-DCN, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (cleaned up); *see also Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting *In Limine*, Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (citation omitted), "a district court has discretion in ruling on a motion in limine," *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

### III. DISCUSSION

On February 20, 2020, United States Border Patrol Agents Samuel Salts and Jeremy Mobley were conducting surveillance on a hotel in Post Falls, Idaho, as part of an illegal immigration investigation. The Agents had previously learned Huerta-Zuniga was possibly staying at the hotel and was not lawfully present in the country. As the Agents observed the hotel, Huerta-Zuniga and an unknown passenger (later determined to be Garcia-Estrada) arrived.

The Agents made contact with Huerta-Zuniga and Garcia-Estrada and inquired about their legal status. After briefly talking with Defendants, the Agents indicated that they were going to place Huerta-Zuniga under arrest. This led to a physical fight between Agent Salts and Garcia-Estrada, and between Agent Mobley and Huerta-Zuniga, that lasted

approximately ten minutes. Upon subduing Defendants with the help of Post Falls police officers, the Agents arrested Defendants.

Defendants have been charged and indicted on one count of assault of a federal agent in violation of 18 U.S.C. § 111(a). On May 4, 2021, Defendants filed their Motion in Limine raising nine issues. Dkt. 44. The Government responded, offering no objections or opposition to most of the issues raised. Dkt. 46. However, the Government did oppose Defendants' request for the exclusion of all expert witnesses for the prosecution. In their Reply, Defendants doubled down on their request to exclude the expert witnesses, insisting that the witness disclosures were untimely and improper. Dkt. 52.

The matter is now ripe before the Court. The Court will address each of the nine issues raised by Defendants one by one.

### 1. Exclusion of Witnesses

First, pursuant to Federal Rule of Evidence 615, Defendants request exclusion of all witnesses during other witnesses' testimony, with the exception of defense witness United States Border Patrol Agent Ruben Sandoval. Defendants also request that the United States' designated representative "testify first so as not to violate the spirit" of Rule 615. Dkt. 44, at 3.

"At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. However, the "rule does not authorize excluding," among others, a designated representative for a party that is not a natural person—such as the United States in this case. Fed. R. Evid. 615(b). In *United States v. Valencia-Riascos*, the Ninth Circuit rejected several claims that the district court erred by

allowing a designated law enforcement officer to sit at the government's table during the entire case and testify at the end of the government's case-in-chief. 696 F.3d 938, 942–44 (9th Cir. 2012). In doing so, the Ninth Circuit "observe[d] that it may be a good practice to require case agent witnesses to testify first," but declined to adopt a strict rule that the government proceed in such a manner. *Id.* at 943 (cleaned up).

In this case, the Government does not object to, or otherwise oppose, Defendants' requests to exclude witnesses or have its designated representative testify first. Dkt. 46, at 3. Therefore, the Court will exclude all witnesses from being present while they are not testifying, except for Mr. Sandoval. The Government's designated representative will provide testimony first and thereafter be excused. Defendants' requests in this respect are GRANTED.

### 2. Rule 404(b) and 609 Evidence

Next, Defendants ask the Court to prohibit the Government from eliciting any evidence of which the Government has not given proper notice under Federal Rules of Evidence 404(b) or 609. Beyond these two rules, Defendants cite the District of Idaho's Revised Criminal Procedural Order No. 377, which requires notice of Rule 404(b) evidence 45 days prior to trial. The Government does not oppose Defendants' request and responds by saying that it does not intend to file any motions regarding admission of Rule 404(b) or 609 evidence.

Under Rule 404(b)(3), prosecutors in criminal cases must "provide reasonable notice" of any Rule 404(b) evidence they intend to offer in writing before trial "or in any form during trial if the court, for good cause, excuses lack of pretrial notice." Fed. R. Evid.

404(b)(3). Rule 609's only notice requirement is "reasonable written notice of the intent to use" evidence of convictions from which ten years have passed since the later event of conviction or release from confinement. Fed. R. Evid. 609(b)(2).

Proper notice must be followed under the cited rules—and all other notice rules for that matter. However, there does not appear to be any dispute between the parties on this issue because the Government has offered no opposition to Defendants' request. Therefore, the Court need not issue a ruling on this issue.

### 3. Expert Witnesses

Speaking of notice, Defendants' next request is by far the most contentious question presented in the instant motion: whether the Government's expert disclosures in this case were timely and proper. Defendants ask the Court to prohibit the Government from calling any expert witnesses because they claim the Government's notice of its proposed expert witnesses was untimely.

A timeline of the expert disclosures in this case informs this issue. On April 16, 2021, Defendants disclosed Sandoval, a former Border Patrol Agent with many years of experience training agents in both proper protocols and Spanish, as their expert witness. Dkt. 41, at 1. Sandoval intends to testify regarding Border Patrol protocol for agents to identify themselves during plain-clothes operations, the Agents' Spanish proficiency in identifying themselves to Defendants, the Agents' use of force, and the Agents' overall performance of their duties. *Id.* at 2–4.

The pretrial motions deadline was April 17, 2021. Dkt. 39. On April 19, 2021, the defense, through mutual agreement with the Government, disclosed Sandoval's expert

witness report. On May 4, 2021, Defendants asked the Court to preclude any prosecution expert witnesses by way of the instant motion. Dkt. 44.

A week later, on May 11, 2021, the Government notified Defendants, through its response brief, that it would "possibly" call two expert witnesses. Dkt. 46. The Government suggests it may call Josh Espiritu with Border Patrol to testify regarding Border Patrol policies and Diana Arbiser to testify regarding the Agents' Spanish proficiency. Several days later, the Government provided the defense with curriculum vitae for Espiritu and Arbiser. At the time Defendants' Reply was filed on, May 18, 2021, the Government had not provided any report outlining the anticipated expert witness testimony. However, the Government disclosed a report later that day. The Government's expert witnesses' opinions are essentially the opposite of that of Sandoval.

The Government opposes Defendants' request to exclude these witnesses, arguing that Espirtu's and Arbiser's respective testimonies relate to the very issues to which Defendants' expert will testify and that its disclosures provided adequate time for the defense expert's review.

The Court agrees with the Government. To begin, although Federal Rule of Criminal Procedure 16(a)(1)(G) requires the Government to disclose its expert witnesses to Defendants, nothing in the text of the Rule imposes a specific deadline for expert witness disclosures or speaks at all to the timing of such disclosures. Moreover, this Court did not impose such a deadline. Therefore, no specific deadline was violated in this case.

Next, the advisory committee's notes to Rule 16 addresses this issue, but do not dictate the result Defendants seek. The committee's notes state, "[a]lthough no specific

timing requirements are included, it is expected that the parties will make their requests and disclosures in a timely fashion." Fed. R. Crim. P. 16 advisory committee's notes (1993). Here, the Government notified Defendants of its experts one week after it learned of Defendants' expert, which was twenty-one days prior to trial. Under the circumstances, the Government acted in a timely fashion.

In addition, while the Ninth Circuit has weighed in on this issue, the two principal cases Defendants cite are materially distinguishable from the case at hand. In *United States v. Barrett*, the Ninth Circuit held that the district court abused its discretion when it denied a motion to continue the trial where the defendant received notice of the government's intent to call a photographic expert eight days before trial, and the results of the expert's test only two days before trial. 703 F.2d 1076, 1081 (9th Cir. 1983). The court reasoned that the defendant did not have "adequate time to obtain an expert to assist him in attacking" the government's expert. *Id.* Ultimately, the court found the error to be harmless, but it was an error, nonetheless. *Id.* Similarly, in *United States v. Ornelas*, the Ninth Circuit upheld the exclusion of a defense expert witness where the defense missed an expert disclosure deadline set by the district court and the disclosure was five days before trial. 906 F.3d 1138, 1149–50 (9th Cir. 2018).

This case is materially distinguishable from *Barrett* and *Ornelas* on several grounds. First, in this case, the Government disclosed its witnesses twenty-one days before trial, unlike the eight and five days in *Barrett* and *Ornelas*, respectively.

Second, the timing of Defendants' disclosure matters here. Defendants notified the Government of their intent to call an expert on April 16, 2021. Defendants then sought to

preclude the Government from using its own experts on May 4, 2021. A week later, the Government notified Defendants of its intent to call two experts. This series of events shows that the Government was not merely standing by to impose expert by ambush. Rather, it demonstrates that the Government found its proposed experts in response to Defendants' disclosure. Thus, the timing problem about which Defendants complain is, at least in part, due to the timing of their own disclosure. Had Defendants disclosed their expert sooner, the Government's disclosures could have promptly followed, as they did in this case, giving both sides even more time before trial.

Third, unlike in *Barrett*, where the defense had very little time to find an expert to opine on the new expert opinions related to photography, here Defendants already have an expert who can testify on the same topics (Border Patrol policies and Spanish proficiency) as will the Government's experts. Indeed, those are the very subject matter of Sandoval's opinions. Therefore, this case does not present a situation in which Defendants have to find and prepare a witness on a totally new topic on the eve of the trial.

Lastly, and to reiterate, unlike the specific deadline imposed by the district court in *Ornelas*, there was no specific deadline for expert witness disclosures in this case. Thus, the Government did not disobey the Court's scheduling order, which is a significant distinction.[2]

---

[2] Until Defendants disclosed Sandoval as their expert witness, there was no expert opinion for the Government to rebut. So, even if the Government had violated a deadline for expert witness disclosures— which it did not—the Government would have still been able to use its expert witnesses in its rebuttal.

In short, this case does not present the same concerns as those identified in *Barrett* and *Ornelas*. The Court finds that the Government disclosed its experts in a timely fashion. Both Defendants and the Government turned square corners in dealing with each other in this case.[3] Accordingly, Defendants' request that the Court exclude the Government's expert witnesses is DENIED.

## 4. *Henthorn* Materials

Citing *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), Defendants also request "any impeachment materials present in the personnel files" of Agents Salts and Mobley, as well as two other local law enforcement agents that Defendants anticipate will testify. Dkt. 44, at 5–6.

The *Henthorn* court repeated "the procedure the prosecution must follow when confronted with a request by a defendant for the personnel files of testifying officers" enunciated in *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984). That is, the Government "must disclose information favorable to the defense that meets the appropriate standard of materiality. If the prosecution is uncertain about the materiality of information within its possession, it may submit the information to the trial court for an in camera inspection and evaluation." *Henthorn*, 931 F.2d at 30–31 (cleaned up). On appeal, if the Government fails to examine the personnel files of testifying officers, the case is remanded

---

[3] As a final note, nothing about the Court's Revised Criminal Procedural Order, General Order No. 377, requires the result Defendants suggest. Most relevant to this issue, General Order No. 377 states: "Within fourteen (14) days of receiving written notice of expert testimony, the opposing party must notify the Court if any scientific methodology or other specialized knowledge is going to be objected to or challenged. The Court will make a determination if a hearing is necessary regarding the admissibility of the expert witness testimony." Defendants have had, and continue to have, time to assess and to determine whether they think a *Daubert* hearing is necessary for the Government's two expert witnesses.

to the district court to review the files and determine whether information should have been disclosed. *Id.* at 31. If it should have been, the district court determines whether the defendant is entitled to a new trial or whether nondisclosure was harmless beyond a reasonable doubt. *Id.*

Here, the Government responds to Defendants' request for *Henthorn* evidence by representing that it has contacted the law enforcement agents, has initiated an examination of the personnel files, and will submit any pertinent information for the Court's review. Accordingly, a ruling on this issue is unnecessary at this juncture. The Court will take up this issue prior to jury selection on the first day of trial to ensure that any and all materials required to be disclosed have been.

### 5. *Brady* Materials

Defendants next seek disclosure of all materials due under *Brady* and its progeny. *See generally Brady v. Maryland*, 373 U.S. 83 (1983). They assert that, to date, they have not received any *Brady* materials. The Government responds that it "is aware of its *Brady* obligations and will continue to fulfill them." Dkt. 46, at 4. Defendants do not make any further argument. The law requiring *Brady* disclosures undoubtedly applies to this case. That said, in the absence of any apparent controversy on this issue, there is no reason for the Court to set forth a ruling.

### 6. Vouching

Defendants also ask the Court to "preclude the [G]overnment from any and all forms of vouching." Dkt. 44, at 6. "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that

information not presented to the jury supports the witness's testimony." *United States v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005) (cleaned up). Here, there is no indication that the Government intends to employ any improper tactics of vouching. Accordingly, the Court will not announce a prospective ruling on this issue. Defendants will need to make the appropriate objection when and if they believe the Government has engaged or attempted to engage in "vouching."

### 7. Hybrid Opinion Testimony

Defendants ask the Court to prohibit prospectively the use of "hybrid witnesses." In other words, they do not want immigration or law enforcement agents drifting between lay witness testimony and expert witness testimony. Defendants are concerned, in particular, that the Government's witnesses will opine on issues of the proper use of force or the question of the extent of bodily injury. The Government asserts that it "does not intend to use any of its fact witnesses to elicit expert opinions." Dkt. 46, at 5. Therefore, a prospective ruling on this issue is unnecessary.

### 8. Juror Video on Unconscious Bias

Defendants additionally request the Court to play an instructional video on unconscious or implicit bias for the jury. The Government does not oppose this request. The Court has already included the video to which Defendants refer in its routine jury procedures and will ensure the video is played for the prospective jurors in this case. The request is GRANTED.

### 9. Leave to File

Lastly, Defendants request "leave to file further motions based on information

gained from any further discovery or newly disclosed evidence or witnesses submitted by the [G]overnment." Dkt. 44, at 9. The Government offers no opposition. The Court finds good cause for this request, especially in light of the Government's ongoing review of materials. Therefore, Defendants' request is GRANTED.

## V. ORDER

The Court HEREBY ORDERS:

1. Defendants' joint Motion in Limine (Dkt. 43) and joint Amended Motion in Limine (Dkt. 44) are GRANTED in PART and DENIED in PART.

DATED: May 25, 2021

David C. Nye
Chief U.S. District Court Judge